1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD JAMES CHENETTE,

                          Petitioner,

         v.

STEVE SINCLAIR,

                          Respondent.

No. C13-5719 BHS-KLS

**REPORT AND RECOMMENDATION**
**Noted for:  December 13, 2013**

Petitioner Ronald James Chenette was convicted by jury verdict of harming a police dog (count 1) and plead guilty to unlawful possession of a firearm in the first degree (count 2).  On May 15, 2009, the trial court (the Honorable Roger Bennett) sentenced Mr. Chenette to life imprisonment without the possibility of parole.  ECF No. 15, Exhibit 6.  In his 28 U.S.C. § 2254 petition, Mr. Chenette raises four claims: (1) denial of right to conflict-free counsel; (2) denial of right to notice of charges; (3) violation of double jeopardy; and (4) denial of conflict-free counsel on appeal.  ECF No. 4, at 5-9; ECF No. 5, at 13-21 (Claim 1), 23-26 (Claim 2), 27-33 (Claim 3), and 34-36 (Claim 4).

Respondent filed an answer and submitted the relevant state court record.  ECF Nos. 14 and 15.  The undersigned recommends that the petition be denied and this action dismissed with prejudice.

REPORT AND RECOMMENDATION - 1

# BACKGROUND

**A.    Statement of Facts**

The Washington Court of Appeals summarized the facts of Mr. Chenette's case as follows:

> On October 23, 2007, Chenette spent the morning drinking with Richard Countryman.  Chenette suffers from chronic paranoid schizophrenia.  His symptoms include delusions, hallucinations, and mood swings, which are often exacerbated by alcohol.

> At some point in the morning, Chenette and Countryman walked to the store to buy more beer.  The police received a report that a mentally unstable man, armed with a handgun, was making statements about shooting police.  Numerous law enforcement officers responded to the area, setting up a perimeter in order to locate the subjects.

> Chenette ran into the woods and hid for several hours.  The SWAT (Special Weapons and Tactics) team deployed a police dog to locate Chenette. Shortly after the dog was released, several officers heard a gunshot.  The dog was later found with a gunshot wound to the head.

> Chenette eventually came out of the woods.  Deputy Alan Earhart ordered Chenette to get down on the ground.  When he did not, Deputy Earhart released a second police dog.  The dog caught Chenette and bit his right arm.  The police apprehended Chenette and transported him to the hospital to attend to his injury.

> On the way to the hospital, one of the officers riding in the ambulance advised Chenette of his *Miranda*[1] rights.  Chenette, who was agitated and argumentative, said he did not understand them.  At the hospital, after his wounds had been sutured and a drain tube inserted, Deputy Earhart attempted to question Chenette a second time.  Chenette told Earhart that a large black dog had bitten him and that Deputy Earhart was lucky Chenette did not have a blade, because otherwise the dog would have been dead.  Chenette also said he did not know what Earhart was talking about when he mentioned that a dog had been shot.

> The State charged Chenette with harming a police dog and first degree unlawful possession of a firearm.  RCW 9A.76.200; RCW 9.41.040(1)(a). Chenette pleaded guilty to the firearm charge and the case proceeded to trial on the remaining count.

> Before trial, the court conducted a 3.5 hearing to determine the admissibility of Chenette's statements to Deputy Earhart.  The deputy testified that at the hospital he advised Chenette of his rights.  According to Deputy

REPORT AND RECOMMENDATION - 2

Earhart, Chenette responded that he understood his rights and that he was willing to talk.  Deputy Earhart further testified that Chenette followed along, gave appropriate answers, was pleasant to talk to, and that they had a "lighthearted" conversation.  Report of Proceedings (RP) at 52.  He stated that he did not know of any medication that had been administered but noted the change in Chenette's demeanor from aggressive to cooperative.  Finding that Chenette appeared rational, and with no record that he was under the influence of any drugs, the court ruled that his waiver was voluntary and admitted his statements.

The jury found Chenette guilty of harming a police dog.  Because the jury also found that he was armed with a firearm during the commission of the crime, his offense was classified as a most serious offense.  RCW 9.94A.030(29)(t).  At sentencing, the State established, by a preponderance of the evidence, that Chenette had two prior convictions for most serious offenses.  Concluding that Chenette was a persistent offender, the court sentenced him to life without the possibility of parole.

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).  [Footnote by the court.]

ECF No. 14, Exhibit 9, at 1-3.

**B.    State Court Procedural History**

**1.    Direct Appeal**

Mr. Chenette appealed his conviction and sentence to the Washington Court of Appeals.  ECF No. 15, Exhibit 7.  On October 26, 2010, the Court of Appeals issued an unpublished opinion rejecting these arguments and affirming Mr. Chenette's conviction and sentence.  *Id.,* Exhibit 9.  Mr. Chenette sought discretionary review by the Washington Supreme Court.  ECF No. 15, Exhibit 10.  His petition for review was denied without comment on March 1, 2011.  *Id.,* Exhibit 12.

**2.    Personal Restraint Petition**

On February 23, 2012, Mr. Chenette filed a pro se personal restraint petition directly with the Washington Supreme Court.  ECF No. 15, Exhibit 13.  The Supreme Court transferred the matter to the Court of Appeals.  *Id.,* Exhibit 18.  On January 14, 2013, the Chief Judge of the

REPORT AND RECOMMENDATION - 3

Court of Appeals dismissed the petition, concluding that none of the claims had merit.  *Id.,* Exhibit 19.  Mr. Chenette filed a motion for discretionary review.  *Id.,* Exhibit 20.  On August 12, 2013, the Commissioner of the Washington Supreme Court denied discretionary review.  *Id.,* Exhibit 22.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act, a habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.*  The Supreme Court has made clear that a state court's decision may be overturned only if the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003).

AEDPA requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  In addition, review of state court decisions under 28 U.S.C. § 2254(d)(1) is

REPORT AND RECOMMENDATION - 4

1   "limited to the record that was before the state court that adjudicated the claim on the merits."

2   *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

3                              **EVIDENTIARY HEARING**

4          The decision to hold a hearing is committed to the Court's discretion.  *Schriro v.*

5   *Landrigan*, 550 U.S. 465, 473 (2007).  "[A] federal court must consider whether such a hearing

6   could enable an applicant to prove the petition's factual allegations, which, if true, would entitle

7   the applicant to federal habeas relief."  *Landrigan*, 550 U.S. at 474.  In determining whether

8   relief is available under 28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before

9   the state court.  *Cullen v. Pinholster*, ---U.S.---, 131 S.Ct. 1388 (2011).  A hearing is not required

10  if the allegations would not entitle petitioner to relief under 28 U.S.C. § 2254(d).  *Landrigan,*

11  550 U.S. at 474.  "It follows that if the record refutes the applicant's factual allegations or

12  otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."

13  *Id.*; *see also Cullen,* 131 S. Ct. 1388 (2011).

14         The Court finds it unnecessary to hold an evidentiary hearing because Mr. Chenette's

15  claims may be resolved on the existing state court record.

16                                  **DISCUSSION**

17  **A.      Claims 1 and 4 – Right to Conflict Free Trial and Appellate Counsel**

18         In his first ground for relief, Mr. Chenette complains that his court-appointed defender

19  labored under a conflict of interest because he was a county employee working for the judge.  In

20  his fourth ground for relief, Mr. Chenette raises a similar argument concerning his court-

21  appointed counsel on appeal.

22         The Washington Court of Appeals first rejected this claim as to Mr. Chenette's trial

23  counsel:

REPORT AND RECOMMENDATION - 5

Petitioner first argues that he was denied his Sixth Amendment right to effective assistance of counsel because his trial counsel had a conflict of interest stemming from his representation of indigent clients.  He reasons that because over half of his trial counsel's cases involve indigent clients, his attorney is a county employee and therefore he works for the judge because he too is a county employee.

Unless Petitioner can show that counsel actively represented conflicting interests, he cannot establish a constitutional predicate for a claim of ineffective assistance.  *Mickens v. Taylor*, 535 U.S. 162, 165-66, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002).  Merely that a public defender or appointed counsel receives pay from the State does not create a conflict of interest or render the defendant's counsel ineffective.  *See Tamez v. Director, TDCJ-CID*, 550 F.Supp.2d 639, 643 (E.D. Tex. 2008), *aff'd sub nom. Tamez v. Thaler*, 344 F. App'x 897 (5th Cir. 2009), *cert. denied*, 130 S. Ct. 1523 (2010) (arguments that "public defenders have a conflict of interest because they are paid by the State – have been rejected by the courts.").  Petitioner fails to show that trial counsel actively represented conflicting interests and thus his claim fails.

ECF No. 15, Exhibit 19, at 2.

The Washington Court of Appeals then rejected Mr. Chenette's claim regarding his appellate counsel:  "Finally, petitioner contends that he was denied his right to appellate counsel for his direct appeal because his attorney represents indigent defendants and therefore has a conflict of interest.  This is the same claim petitioner made about trial counsel.  For the same reasons, it fails."  *Id.* at 4.

The Commissioner of the Washington Supreme Court reviewed and rejected Mr. Chenette's claims based on the same reasoning:

Mr. Chenette first contends that he was denied his Sixth Amendment right to effective assistance to counsel because his assigned trial counsel had a conflict of interest stemming from the fact that he was paid by the State to represent Mr. Chenette and other indigent defendants, making counsel an employee of the state and the trial judge.  But Mr. Chenette fails to show that counsel actually represented conflicting interests and that he was prejudiced by the conflict; therefore, he cannot establish a Sixth Amendment violation.  *Mickens v. Taylor*, 535 U.S. 162, 165-66, 175, 122 S. Ct. 1237, 152 L.Ed.2d 291 (2002).  And Mr. Chenette fails to identify, and I am unaware of, any authorities holding that a defense attorney provided at public expense has an inherent conflict of interest. The few decisions that discuss the issue reject the notion that a public defender's

REPORT AND RECOMMENDATION - 6

status as a public attorney creates a conflict of interest. *See Tamez v. Director, TDCJ-CID,* 550 F.Supp.2d 639, 643 (E.D. Tex. 2008), *aff'd,* 344 Fed. App'x 897 (5th Cir. 2009), *cert. denied,* 130 S.Ct. 1523 (2010).

…

Finally, Mr. Chenette claims that appellate counsel was ineffective because she had a conflict of interest arising from her representation of indigent clients at public expense.  That argument fails for the reasons discussed in relation to trial counsel.

ECF No. 15, Exhibit 22, at 1, 2.

The Sixth Amendment right to the assistance of counsel embraces the right to conflict-free and undivided loyalty of counsel.  *Wood v. Georgia*, 450 U.S. 261, 272 (1981).  In order to demonstrate a Sixth Amendment violation based upon a conflict of interest, the defendant must show that counsel actively represented conflicting interests and that the conflict adversely affected counsel's performance.  *Mickens v. Taylor*, 535 U.S. 162, 171-72 & n.5 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980).  Unlike a challenge to a counsel's competency, prejudice is presumed if the defendant is able to demonstrate an actual conflict that adversely affected counsel's performance.  *Strickland v. Washington*, 466 U.S. 668, 692 (1984); *Cuyler*, 446 U.S. at 349-50.  But the defendant must show an actual conflict before he is entitled to relief; a merely theoretical division of loyalties is insufficient.  *Mickens*, 535 U.S. at 171; *Cuyler*, 446 U.S. at 350.

In Claim 1, Mr. Chenette argues that his Sixth Amendment right to conflict-free counsel was violated by the appointment of a public defender to represent him at trial.  ECF No. 4, at 5. In Claim 4, Mr. Chenette makes a similar allegation of a conflict of interest on the part of his appointed appellate counsel.  *Id*. at 9.  In both claims he appears to be arguing that public defenders labor under an inherent conflict of interest simply because they are paid by the government and appointed by the courts.  However, Mr. Chenette does not allege any actual

REPORT AND RECOMMENDATION - 7

1    conflict of interest.  He does not point to any actual prejudice that he suffered in his case as a

2    result of the alleged conflict of interest, nor does he even suggest that his trial counsel or

3    appellate counsel improperly took (or omitted) certain steps in their representation because of the

4    alleged conflict.  His allegations demonstrate, at most, a merely theoretical division of loyalties,

5    which is insufficient under *Mickens v. Taylor, supra*.

6            The Court is unaware of, and Mr. Chenette provides no citation to, any cases that support

7    a holding that the appointed counsel system creates an inevitable conflict of interest.  The

8    Washington Court of Appeals' decision is neither contrary to, nor an unreasonable application

9    of, clearly established Supreme Court law, nor was its decision based on an unreasonable

10   determination of the facts.  Accordingly, Mr. Chenette is not entitled to relief on Claims 1 and 4

11   and they should be denied.

12   **B.      Claim 2 – Right to Notice of Charges**

13           In Claim 2, Mr. Chenette argues he was denied his right to notice of the charges against

14   him.  He does not allege that the charging document in his case was defective.  Instead, he

15   blames the alleged lack of notice on the fact that the prosecutor provided all discovery materials

16   to his appointed defense counsel rather than providing them to Mr. Chenette personally.   The

17   Washington Court of Appeals dismissed this claim:

18           To the extent petitioner is complaining that the State should have provided the
             discovery to him before trial instead of his attorney, his claim also fails. The State
19           cannot communicate with a defendant while the defendant has counsel without
             implicating the defendant's constitutional right to counsel.  *See State v. Granacki*,
20           90 Wn. App. 598, 959 P.2d 667 (1998).

21   ECF No. 15, Exhibit 19, at 3.  *See also* Rule of Professional Conduct (RPC) 4.2 (generally

22   forbidding an attorney's communication with a person the attorney knows to be represented by

23   counsel).  The Washington Supreme Court Commissioner agreed:

REPORT AND RECOMMENDATION - 8

1
2
3
4

       Mr. Chenette further urges that he was denied his right to adequate notice of the nature of the charges against him when the State provided discovery to his attorney but not to him.  But it would have been inappropriate for the State to provide discovery directly to Mr. Chenette because he was represented by counsel.  To the extent Mr. Chenette may be asserting a right to public record, he cannot seek such a remedy by personal restraint petition  RAP 16.4(d).

5

ECF No. 15, Exhibit 22, p. 2.

6

7

8

9

       The Constitution requires the prosecutor to disclose evidence to the defense that is both favorable to the accused and material either to guilt or punishment.  *United States v. Bagley*, 473 U.S. 667, 674 (1985) (*citing Brady v. Maryland*, 373 U.S. 83, 87 (1963)).  But "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.

10

11

12

13

*Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) *(quoting Wardius v. Oregon*, 412 U.S. 470, 474 (1973))*; see also Gray v. Netherland*, 518 U.S. 152, 168 (1996).  Discovery in criminal cases is ordinarily a matter of state law, the violation of which does not provide a basis for federal habeas relief.  *Coleman v. Calderon*, 150 F.3d 1105, 1112 (9th Cir. 1998), *rev'd on other grounds, Calderon v. Coleman*, 525 U.S. 141 (1998).  In Washington, criminal case discovery is governed by court rule, and enforcement of the parties' discovery obligations is subject to the trial court's discretion.  Washington Superior Court Criminal Rule (CrR) 4.7; *State v. Gregory*, 158 Wn.2d 759, 822, 147 P.3d 1201 (2006).

14

15

16

17

18

19

20

       Mr. Chenette fails to present a constitutional ground for habeas relief.  He does not allege that the information charging him with the two crimes – the primary source of notice to a defendant of the nature of the charge against him – was either inadequate or was not read to him. He also does not allege that the prosecutor failed to disclose *Brady* material.  Instead, he complains that the prosecutor gave discovery materials to his defense counsel and not directly to him.  Mr. Chenette has failed to state a constitutional violation.  In addition, the remedy which Mr. Chenette seeks – monetary sanctions against the state prosecutor and to be provided copies

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 9

of the discovery material (see ECF No. 5, at 26) – is not available in a federal habeas proceeding. The unique purpose of the writ is to provide a remedy for prisoners who are challenging the fact or duration of their physical restraint and are seeking immediate release or a speedier release from custody. *Preiser v. Rodriguez*, 411 U.S. 475, 498 (1973).

Based on the foregoing, the undersigned concludes that Mr. Chenette is not entitled to federal habeas relief on Claim 2 and that it should, therefore, be dismissed.

**C.     Claim 3 – Double Jeopardy**

In Claim 3, Mr. Chenette argues his right against double jeopardy was violated by the multiple punishments he received for harming a police dog, with a firearm sentence enhancement (count 1), and unlawful possession of a firearm in the first degree (count 2), both of which crimes stemmed from the same criminal episode.  Although his arguments are not entirely clear, Mr. Chenette appears to be arguing in particular that the firearm sentence enhancement for count 1 – which elevated the underlying offense into a "most serious offense" for purposes of Washington's "three strikes" sentencing law – was duplicative of the charge of unlawful possession of a firearm in count 2.  *See* ECF No. 5, at 27-33.

The Washington Court of Appeals rejected the double jeopardy claim Mr. Chenette raised in his personal restraint petition:

> Petitioner next argues that because he pleaded guilty to unlawful possession of a firearm, the State violated his double jeopardy rights when it charged him with possessing a firearm when he shot the police dog.  But our Supreme Court has rejected this and similar arguments finding that even a weapon enhancement on a crime which contains a firearm element does not violate double jeopardy. *State v. Aguirre,* 168 Wn.2d 350, 229 P.3d 669 (2010).  Thus, petitioner's claim fails.

ECF No. 15, Exhibit 19, at 3.

The Washington Supreme Court similarly denied relief on this claim:

REPORT AND RECOMMENDATION - 10

1
2
3
4

> Mr. Chenette next asserts that his conviction for unlawful possession of a firearm violates double jeopardy principles in light of the firearm special verdict finding on his conviction for harming a police dog. He is wrong. *See State v. Aguierre,* 168 Wn.2d 350, 366-67, 229 P.3d 669 (2010) (deadly weapon enhancement imposed on conviction for which use of deadly weapon is an essential element does not violate double jeopardy).

5    ECF No. 15, Exhibit 22, p. 2.

6
7    The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be

8    subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.

9    This principle applies to state criminal prosecutions through the Due Process Clause of the

10   Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 795-96 (1969). The guarantee

11   against double jeopardy includes three distinct constitutional protections: "[It] protects against a

12   second prosecution for the same offense after acquittal. It protects against a second prosecution

13   for the same offense after conviction. And it protects against multiple punishments for the same

14   offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (*quoting Brown v. Ohio*, 432 U.S. 161, 165

15   (1977)).

16
17   The United States Supreme Court applies a statutory theory to determine whether a

18   defendant's prosecution or conviction and punishment for two offenses violate the Double

19   Jeopardy Clause of the United States Constitution. *See Blockburger v. United States*, 284 U.S.

20   299, 304 (1932). The *Blockburger* test provides that, where the same act or transaction

21   constitutes a violation of two distinct statutory provisions, the test to be applied to determine

22   whether there have been two offenses or only one for double jeopardy purposes is whether each

23   statutory provision requires proof of an additional fact which the other does not. *Id*. at 304. If

24   the legislature clearly intended to punish certain acts as separate offenses rather than as one

25   offense, regardless of whether those two statutes proscribe the "same" conduct under

26   *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and

REPORT AND RECOMMENDATION - 11

the trial court or jury may impose cumulative punishment under such statutes in a single trial. *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).  The Double Jeopardy Clause does no more than prevent the sentencing court from imposing greater punishment than the legislature intended.  *Id*. at 368; *see also Plascencia v. Alameida*, 467 F. 3d 1190, 1204 (9th Cir. 2006) (imposition of 25-year to life imprisonment sentence for first-degree murder in addition to 25-year to life sentencing enhancement for using a firearm to commit the murder did not violate the double jeopardy clause where California legislature intended to provide additional sentencing increase when a firearm is used to commit murder).

Mr. Chenette alleges that the firearm sentence enhancement on count 1, in combination with the unlawful possession of a firearm charge in count 2, subjected him to multiple punishments in violation of double jeopardy.  However, the firearm sentence enhancement and the crime of unlawful possession of a firearm are not the "same offense," for purposes of *Blockburger* analysis.  Washington law provides for additional punishment if it is established that the defendant was armed with a firearm at the time of his offense.  RCW 9.94A.533(3); *see also* RCW 9.94A.825 (deadly weapon special verdicts).  Mr. Chenette was found guilty of the crime of harming a police dog and the jury also found that he was armed with a firearm in the commission of that offense.  ECF No. 15, Exhibit 6, at 1-2.  Separately from that offense, Mr. Chenette was charged with (and pled guilty to) one count of unlawful possession of a firearm in the first degree.  Under RCW 9.41.040(1)(a), a person is guilty of possession of a firearm in the first degree if the person "owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any serious offense as defined in this chapter."  ("Serious offense" is defined in RCW 9.41.010(16)).

REPORT AND RECOMMENDATION - 12

1    A defendant can receive a firearm sentencing enhancement under RCW 9.94A.533(3) for

2  the use of a firearm in the commission of a crime even if his possession of the firearm was

3  otherwise lawful and he has never been previously convicted of a crime. Similarly, a defendant

4  may be found guilty of the crime of unlawful possession of a firearm in the first degree even if

5  he does not discharge the firearm or use it in the commission of a crime.  The Washington courts

6  have repeatedly held that the Washington Legislature specifically intended that use of a firearm

7  be separately punished, even when use of a firearm is an element of the underlying crime.  *See*

8  *State v. Aguirre*, 168 Wn.2d 350, 229 P.3d 669 (2010); *State v. Kelley*, 168 Wn.2d 72, 226 P.3d

9  773 (2010).

10    The undersigned concludes that Mr. Chenette is not entitled to federal habeas relief on

11  Claim 3 and therefore, Claim 3 should be dismissed.

## CERTIFICATE OF APPEALABILITY

12    A petitioner seeking post-conviction relief may appeal a district court's dismissal of his §

13  2254 motion only after obtaining a certificate of appealability ("COA") from a district or circuit

14  judge. A COA may issue only where a petitioner has made "a substantial showing of the denial

15  of a constitutional right."  *See* 28 U.S.C. § 2253(c)(3). Mr. Chenette is not entitled to a COA

16  because he has not shown that "jurists of reason could disagree with the district court's

17  resolution of his constitutional claims or that jurists could conclude the issues presented are

18  adequate to deserve encouragement to proceed further."  *Miller–El v. Cockrell*, 537 U.S. 322,

19  327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

20    Mr. Chenette should address whether a COA should be issued in his written objections, if

21  any, to this Report and Recommendation.

REPORT AND RECOMMENDATION - 13

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**CONCLUSION**

Based on the foregoing, the Court recommends that Mr. Chenette' habeas petition (ECF No. 3) be **denied and his claims dismissed with prejudice.**

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).   Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **December 13, 2013,** as noted in the caption.

**DATED** this  22nd  day of November, 2013.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14